IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| H GUYS, LLC, an Illinois Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | No. 19 C 4974 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| THE HALAL GUYS FRANCHISE, INC., a New Jersey corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The plaintiff has moved to Compel Production of all Documents Responsive to Plaintiff's First Set of Requests for Production. [Dkt. #47]. The motion is said to be "necessary because the law firm representing the [defendants] has allowed representatives of its client to engage in impermissible self-selection of documents to be collected, reviewed, and produced to the plaintiff...." [Dkt. #47 at 1]. And, these representatives were, according to the plaintiff, "directly implicated in the misconduct alleged in the ... [C]omplaint and have the most to lose in this case." *Id*. at 2. The defendant, in responding to the plaintiff's original concerns, insisted that the search was both "appropriate and completed," although it conceded that only 243 documents had been produced, and that those who conducted the document search "are the very same individuals Plaintiff alleges conspired to drive Plaintiff from the [Defendant's] franchise system." *Id*. at 3-4.

When faced with a request to "restart its document collection, review and production in [what the plaintiff claimed would be] an acceptable manner," the plaintiff contends that defense counsel

"curtly declined...." *Id.* at 4. While no particularized claim was raised by the plaintiff to the overall method which was to be employed to select documents, [Dkt. #50 at 7], the plaintiff is adamant that the defendant did not disclose that those potentially affected by the litigation would be personally conducting and directing its ESI collection. [Dkt. #53 at 11]. The Motion to Compel invokes the unquestioned, broad discretion district courts have to tailor discovery to the needs of a particular case. *Id.* at 6-7.[1] Although it acknowledges the breadth of that discretion, the defendant stresses that that discovery is not limitless and, of course, is subject to abuse. In essence, the argument of the defendant is that the Motion to Compel seeks relief that violates the concept of proportionality and thus exceeds the appropriate limits for discovery.

The central argument raised by the Motion to Compel is that "[d]iscovery should be conducted by individuals with the expertise necessary to search and receive all relevant data," and that "manage[ment] of discovery" cannot be deemed proper where, as here, it relies on "highly self-interested custodians" to gather data sought by the opponent in discovery. [Dkt. #47 at 9-10].[2] The Motion to Compel charges that there were virtually no internal communications between the employees and officers of defendant were included in defendant's meager 243 document production, [Dkt. #47 at 12], and of these, most were documents that were forwarded and/or emailed directly to defendant's counsel prior to the onset of litigation.

---

[1] Indeed, two decision-makers—on virtually identical facts—can arrive at opposite conclusions, both of which can constitute appropriate exercises of discretion. *See McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *Accord Mejia v. Cook County*, Ill., 650 F.3d 631, 635 (7th Cir. 2011). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable....").

[2] The Motion to Compel asserts that the documents sought are not only critical to proof of liability, but that plaintiff cannot obtain them from any third party and that defendant, alone, has access to them. *Id.* at 13.

At first blush, the paucity of documents seems odd since internal emails among a company's employees have become a critical and highly persuasive form of evidence that invariably appears in modern litigation in all types of cases. *See, e.g.,* Fitzpatrick*, et al., An Immediate Look at the Legal, Governmental, and Economic Ramifications of the Amendments to the Federal Rules of Civil Procedure and Electronic Discovery*, 2008 ASPIA; Michael J. Serra, *Avoiding an Ethical Iceberg*, 58 Wayne L.Rev. 509, 518 n.71 (2012). Emails between corporate employees may be the most compelling form of evidence, given the ease of sending or replying to such messages and the fact that that very ease causes people to say things they might not otherwise say in more formalized correspondence. Indeed, they are often replete with unrehearsed, spontaneous statements that surpass in simplicity and frankness and ease of understanding other more complicated bits of evidence. *See* Michael B. Bittner, *Electronic Discovery: Understanding the Framework of Florida E-Discovery Law*, Trial Advoc. Q., Spring 2016, at 22; Lawrence D. Rosenberg, *Lawyers' Poker: Using the Lessons of Poker to Win Litigation*, 54 The Advocate (Texas) 10, 12 (2011). Simply stated, "[e]lectronic communications have the potential to ... provide the proverbial 'smoking gun.'" William A. Herbert, *The Electronic Workplace: To Live Outside the Law You Must Be Honest*, 12 Emp. Rts. & Emp. Pol'y J. 49, 5152 (2008).

In this case, the plaintiff has represented, without contradiction, that "virtually no internal communications between the employees and officers of Defendant were included in Defendant's [seemingly meager] 243 document production." [Dkt. #47 at 12]. Instead of internal communications between defendant's officers, it appears that their communications consisted of emails forwarded directly to defendant's counsel prior to the onset of the litigation. In fact, the plaintiff asserts that only 12 of the 79 emails produced are communications that the defendant's law firm was not previously

3

forwarded or included on. [Dkt. #47 at 12]. We are told that no internal communications responsive to plaintiff's request other than these 12 emails not already in defendant's law firm's possession were included in the production. [Dkt. #47 at 12-13]. Given the ubiquity of emails and the critical role they can play, the number of emails produced seems quite low and could cause a reasonable attorney to question the completeness of the turnover in this case.

The Motion ends with a request for an Order compelling the defendant to re-review its ESI "in a way that minimizes the risk of self-selection by interested parties through either working with plaintiff ... or through an alternative means the Court supervises." *Id.* at 15-16. Of course, as the objecting party, the plaintiff in this case has the burden to show why a discovery request or response is improper. *See* Rule 34(b), Federal Rules of Civil Procedure; *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 337 (N.D.Ill, 2005). The defendant has vigorously opposed the Motion and has complained of what it insists would be an "extraordinary and disproportionate [effort]" that would serve no purpose were the Motion to be granted. [Dkt. #50 at 6]. In an attempt to support its position, the defendant attached to its Response a Declaration from Ahmed Abouelenin, one of those who conducted the document search for the defendant. In it, he explained the methodology he used to locate, retrieve, and produce responsive documents, and insisted that nothing that fit the description in the document request had been withheld. [Dkt. #50 at 2]. Of course, "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018). And this axiom of experience does not cease to have validity merely because the challenged assertions appear in a Declaration made under oath. The presence of the oath, as long and bitter experience teaches, does not ensure that mistake or perjury has or will not occur. "An oath to give 'nothing but

the truth does not guarantee honesty," *United States v. Lewis*, 405 F.3d 511, 512 (7th Cir. 2005), and as bitter experience teaches, witnesses, even with no criminal record, may "lie... when it is to their advantage." *Schmude v. Tricam Industries, Inc.*, 556 F.3d 624, 628 (7th Cir. 2009). *See also Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015); *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir.2006). In short, the fact that the defendant has offered the Declaration of one of its seemingly interested (and perhaps critical) witnesses regarding the collection of documents is neither a guaranty of accuracy nor a substitute for cross-examination. Paper, after all, is patient. Even statements in sworn Declarations in which the declarant is an attorney can be false. *See, e.g., Fed. Trade Comm'n v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 671 (N.D. Ill. 2016)*; Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 379 (N.D.Ill.2012).³ The Reply Brief, as might be expected, took a very different view, insisting that "enacting discovery protocols to ensure adequate preservation, collection, review, and production of ESI, and even hiring or relying upon outside experience [sic] vendors to do so, it is not an extraordinary measure; it is the norm." [Dkt. #53 at 2-3]. To insist, as does the Motion, that the appointment of an outside "expert" is the norm is somewhat of an overstatement. Be that as it may, the animating principle that permits the appointment of experts to evaluate proffered scientific or electronic managed evidence under Rule 706, Federal Rules of Evidence, *see DeKoven v. Plaza Associates*, 599 F.3d 578, 582-583 (7th Cir. 2010); *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 665 (7th Cir. 2002), may permit a judge to appoint a neutral expert – often called a "technical advisor" – to assist in the resolution of discovery disputes that involve technical or complex areas of discovery and many courts

---

³ In *Tellabs Operations, Inc.*, the court said "[a]s it turned out, much of what Ms. Wright [who is in-house counsel for defendant] said in her affidavit was not based on personal knowledge [contrary to her affidavit], and a good deal of what she said in the affidavit was open to serious question, to say the very least."

have done so where ESI disputes or other difficult issues are involved. *See e.g., Procaps S.A. v. Patheon Inc.*, 2015 WL 1880346, 6 (S.D.Fla. 2015); *VSI Holdings, Inc. v. SPX Corp.,* 2004 WL 6047330, 2 (E.D.Mich. 2004); *United Factory Furniture Corp. v. Alterwitz*, 2012 WL 1155741, 5 (D.Nev.2012); *Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n*, 2009 WL 2243854, 2 (S.D.Ohio 2009). *Compare J. Doyle & A.S. Joslyn, The Role of Counsel in Litigation Involving Technically Complex Trade Secrets*, 6 Boston College Industrial and Commercial L.Rev. 743, 747 (1965)("T]he parties may find it advantageous to agree to the use of court-appointed impartial experts in controlling the areas of discovery.").

The question ultimately presented by the Motion to Compel is whether this case requires or justifies a second search overseen by an independent expert. While we think the demand *as made* should be denied at this time, but the plaintiff's request for a second search should be granted as delineated below.

**ARGUMENT**

The 2015 Amendment to Rule 26(b) governs the scope of discovery in federal litigation and permits only "proportional" discovery that is relevant to the claims or defenses. The concept of proportionality did not, however, make its first appearance in the Federal Rules of Civil Procedure with the 2015 Amendments. It originally appeared as part of Rule 26(b)(2)(C)(iii). *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114 (S.D.N.Y. 2016); *Certain Underwriters at Lloyds v. Nat'l RR Passenger Corp.*, 318 F.R.D. 9, 14 (E.D.N.Y. 2016). Renumbering the proportionality requirement and placing it in Rule 26(b)(1) was designed to put a greater emphasis on the need to achieve proportionality than was thought to previously have existed given its placement in the structure of Rule 26. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D.Va. 2016). The renumbering of

the proportionality requirement was thought to restore and emphasize the role proportionality was to play in discovery. *Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc.*, 2016 WL 11220848, at *3 (D.N.J. 2016). *See* the lengthy and informative discussion in *Linda Simard, Seeking Proportional Discovery: The Beginning of the End of Procedural Uniformity in Civil Rules*, 71 Vanderbilt L.Rev., 1919 (2018).

Invoking the vast discretion possessed by district courts to oversee discovery, *Barrow v. Wexford Health Svcs, Inc.*, 2020 WL 2787702, _F.Appx._, (7th Cir. 2020), the Motion to Compel insists that there be a second search by the defendant, and that it be conducted in a way that minimizes the risk of self-selection by interested parties, either through working with plaintiff and plaintiff's proposed search terms or through an alternative means supervised by the court. [Dkt. #47 at 10]. And compelling defendant to produce metadata from its first and future productions. [Dkt. #47 at 16]. The motion also seeks to compel the defendant to provide the search terms used in the review for documents and in all future reviews. [Dkt. #47 at 16-17]. Plaintiff's counsel wants the search done again with the do-over under the supervision of defense counsel's firm or under the direction of the court or by an expert to be chosen by the court. [Dkt. # 47-9].

**A.**

It seems obvious that in litigation, those most likely to conduct an effective search for their company's documents and data are employees of the company. Not only will a party's lawyer lack the experience and the competency to conduct a meaningful search under the Federal Rules of Civil Procedure for documents, but a lawyer's role in any bout of litigation will be inconsistent with that of a gatherer of company documents to be turned over to the opponent in discovery. Lawyers are charged with being legal advisors and counselors; they lack the necessary skill and familiarity with

7

the client's files to enable them to search effectively for and gather documents called for by an opponent's demands under the discovery rules and the very essence of an advocate's role in a case is inconsistent with being compelled to play a role in a case in which counsel is forced to take an active role in discovery activities. It is a party's non-lawyer employees who generally know where things are, how they are stored, what files exist, and what search is required and would be productive. Attorneys are there to advise their client on legal issues, and to make judgments about relevancy and other legal issues.

That does not mean that one side must accord the weight of an encyclical to the other side's representations regarding the completeness and thoroughness of document discovery. No rule requires the kind of involvement in and oversight of discovery that seems to be contended for by the plaintiff's Motion. The cases from other jurisdictions that plaintiff relies on for what plaintiff seems to contend is a general prohibition against "custodian self-collection" do not warrant a different result. *Claredi Corp. v. See Beyond Tech. Corp.*, 2010 WL 1257946, at *7 (E.D. Mo. 2010) involved, *inter alia*, misappropriation and marketing of software code. Obviously, locating one side's confidential code within another side's software requires far more discovery – and direction of discovery – than looking for emails on a certain topic. The process in *Claredi* was intricate and difficult enough that eventually, as the case ground on, a Special Master was appointed. Even so, while the Special Master's recommendation questioned the wisdom of reliance on custodians, it found it was not sanctionable. 2010 WL 11579710, at *5. The court stressed that "[t]here is no indication that SeeBeyond was acting in bad faith or attempting to hide documents; rather that initial [sic] just was not as thorough as, in hindsight, it should have been."

*Burd v. Ford Motor Co.*, 2015 WL 4137915 at *11 (S.D.W.Va. 2015) was a massive product

liability case covering eight years of unintended acceleration flaws. Plaintiff conducted a number of depositions of certain employees because concern was raised about the process they employed in selecting documents to be produced. The court allowed the plaintiff to depose a 30(b)(6) witness on Ford's selection process and document retention policies. That has not occurred in this case and oddly, the plaintiff has not sought to depose the affiants who conducted the collection of documents in this case – although it insists that their involvement necessarily makes unreliable the various searches they performed. In the end, *Burd* denied as premature a motion that sought "a ruling that Ford's prior search, retrieval, and production have been inadequate . . . ." While proportionality in discovery [Dkt. # 47, at 8, 13-14] is an essential factor in any calculus of appropriate discovery, Fed.R.Civ.P. 26(b)(1), mere invocation of the concept, without more, does not solve problems with intractable variables that arise under the discovery rules. Thus, merely to insist that the concept of proportionality is violated in a given discovery will run afoul of the religiously followed rule that boilerplate, unexplained objections are essentially entitled to no weight. *Hay Creek Royalties, LLC v. Roan Res. LLC*, 2020 WL 2850902, at *1 (N.D. Okla. 2020); *In re Caterpillar Inc.*, 2020 WL 1923227, at *14 (M.D. Tenn. 2020).[4]

The cases plaintiff relies on were far more complex and far more likely to involve complicated searches and large electronic files than those likely to have been involved here. But, that being said, the plaintiff submits there are a handful of "smoking gun documents" that one would have reasonably

---

[4] The courts' repeated and universal refusal to accept boilerplate objections, applies to undeveloped claims regarding non-proportionality. *Nguyen v. Quality Sausage Co. LLC*, 2020 WL 2425646, at *2 (N.D. Tex. 2020); Advisory Committee Notes to the 2015 Amendments to Rule 26(b)(1) INSERT that a given request or methodology is not proportional to the needs of the case despite, *see, e.g.,* cases collected in *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) *Steed v. EverHome Mortgage Co.,* 308 F.Appx. 364, 371 (11th Cir. 2009); *Burlington No.& Santa Fe RR Co. v. U.S. District Court*, 408 F.3 1142, 1149 (9th Cir. 2005); *United Auto Ins. v. Veluchamy*, 2010 WL 749980 (N.D.Ill. 2010).

expected would have been produced as responsive, but were not. Here is a sampling of the objections:

> Ex. 10 & 11: Emails where plaintiff asks about the number of spice packets in chicken marinade. We learn it is not 2 packets, as plaintiffs want to use, but 1. Also, plaintiff seemed unable to get the grilling process down. So there is a back and forth on the proper training for these techniques. Both documents relate to training methods and practices and fall in the category of documents that ought to have been produced in response to Requests Nos. 13 & 14. They are relevant to the allegations of the complaint about training and procedures support. See, e.g., Dkt. # 1, ¶. 17.
>
> Ex. 12 is clearly responsive to Request No. 18 as it is about the results of an inspection. It's obviously relevant to the case as it has to do with good cause for termination. It ought to have been produced.
>
> Ex. 13 is a complaint from plaintiffs to defendants about being able to keep up with various changes and updates. It is in response to a letter from defendants, but appears to have been merely exchanged between the two plaintiff owners, Mr. Tan and Mr. Chong and not sent to defendant. Obviously, it could not have been produced by defendant.
>
> Ex. 14 is an internal email about the Wicker Park store closing that defendant produced in discovery as responsive to Request No. 1. This email is the poster child for this squabble. Plaintiff feels there must be more such emails, but defendant says there are not. Again, it's a matter of "we said, they said."

Thus, there is at least some indication that the defendant's search and selection process may have been inadequate – either by design or through inadvertence. In any event "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954); *Siefert v. Alexander*, 608 F.3d 974, 985 (7th Cir. 2010). Parties, understandably, are often less than adequate in being able to determine what is "relevant" to allegations in a Complaint. That is, in part, the function of counsel. Relevance is a legal concept that is not to be interpreted in a grudging fashion. *Faiz-Mohammad v. Ashcroft*, 395 F.3d 799, 808 (7th Cir. 2005). Thus, a proper interpretation of relevance in the context of any given case is one to be made by counsel and ought not to be consigned to non-lawyers –

especially to those whose vital interests may potentially cloud their judgment and impermissibly affect their collection efforts. Yet, that is what the defendant claims occurred here in substance.

Consequently, the defendant is ordered to conduct a second search with defense counsel's guidance and oversight in order that there will be confidence that there has been appropriate compliance with the discovery provisions of the Federal Rules of Civil Procedure. Counsel's general supervision and overall instruction will help to assure that the goal of the Rules will best be accomplished, and that discovery will serve its ultimate purpose of helping the parties to arrive at the truth. *Ferguson v. State of Ga.,* 365 U.S. 570 (1961); *Reid v. Silver*, 354 F.2d 600, 608 (7th Cir. 1965).

Finally, it should go without saying that since the defendant has relied on a Declaration of Mr. Abouelenin [Dkt. #50 at 6], Mr. Abouelenin can be deposed regarding the assertions of his Declaration. It seems rather unfair (to say the least) to offer in support of a party's position a Declaration and then object when the party against whom the Declaration is offered seeks to examine the declarant about what he has sworn to. One-sided presentations that are insulated from scrupulous examination are inconsistent with the ascertainment of truth, which after all, is the object of all discovery and all trials. Perhaps everything said in the Declaration is accurate. But one cannot be sure unless and until the allegations are subjected to cross-examination, which has properly been described as the "greatest legal engine for the discovery of truth ever invented." *Lilly v. Virginia*, 527 U.S. 116, 124 (1999).

In short, defense counsel must reasonably strive to ensure that their client does, in fact, undertake the exhaustive search for relevant documents mandated by the Federal Rules of Civil Procedure.

11

Given the circumstances surrounding the discovery efforts in this case thus far and the seemingly not over complicated nature of the subject matter of the litigation, the cost of bringing in a third party to oversee the contemplated further discovery does not appear proportional to the needs of this case or the issues at stake. Nothing that we have said should be construed as suggesting that Mr. Abouelenin has not told the truth in his Declaration or that there has been a conscious violation of the discovery rules by the defendant. But the defendant has offered Mr. Abouelenin's sworn explanation of events and the plaintiff has a right to test the truthfulness of his statements.

## CONCLUSION

The relief sought by the Motion to Compel is proportional to the needs of the case, considering the importance of the issues at stake, the defendant's apparently exclusive access to the relevant information, the comparative resources of the parties, and the potential importance of the sought discovery to the case. I am persuaded by an overall consideration of the facts and history of the case thus far that the burden of the proposed discovery does not outweigh its potential benefit and would not impose an undue burden on the defendant. The Motion is denied to the extent it seeks to make defendant's counsel an active participant (or its equivalent) in the collection of documents responsive to the plaintiff's discovery demands. And it is denied to the extent it seeks to have this court or an outside expert oversee the proposed additional discovery.

However, it should be emphasized that the role of defense counsel in connection with the efforts of the defendant to properly respond to the present or future discovery requests is not simply that of a passive spectator and that neither side can escape compliance with appropriate discovery "solely on the strength of his attorney's ingenuity." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, _U.S._, 136 S. Ct. 1923, 1933 (2016). The Plaintiff's Motion to Compel [Dkt. #47] is granted in part and

denied in part as discussed above. The request for costs and attorneys' fees is denied. [Dkt. #47 at 16-17]. For future reference, the parties should take note of Judge Easterbrook's Opinion in *Rickels v. City of South Bend, Indiana*, 33 F.3d 785, 786-87 (7th Cir. 1994).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/1/20